IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**HEATHER JORDAN**                                                                                          **PLAINTIFF**

V.                             **CASE NO. 4:21-CV-00359-JM-ERE**

**COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION**                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.      INTRODUCTION

On October 5, 2018, Heather Jordan applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("The Act"), alleging disability beginning June 30, 2008. (Tr. at 10). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on May 8, 2020, an

Administrative Law Judge ("ALJ") denied Ms. Jordan's application on August 5, 2020. (Tr. at 22). Following the ALJ's order, Ms. Jordan sought review from the Appeals Council, which denied her request for review. (Tr. at 1). Ms. Jordan seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.  THE COMMISSIONER'S DECISION

The ALJ found that Ms. Jordan had not engaged in substantial gainful activity since the application date of October 5, 2018.[1] (Tr. at 12). At Step Two of the familiar five-step analysis,[2] the ALJ found that Ms. Jordan had the following severe impairments: fibromyalgia syndrome, minimal degenerative changes of the thoracic spine, polyarthritis, and epilepsy/seizure disorder. *Id*.

---

[1] SSI benefits are not payable for a period prior to a claimant's application, and the relevant time period for determining whether SSI benefits are payable begins on the date the application is filed. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)–(g).

2

After finding Ms. Jordan's impairments did not meet or equal a listed impairment, the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally stoop, kneel, crouch, and crawl; (3) she can frequently but not constantly reach, handle, and finger bilaterally; and (4) she must avoid concentrated exposure to temperature extremes, humidity, and hazards, including no driving as a part of work. (Tr. at 14).

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Ms. Jordan's RFC would allow her to perform jobs that exist in significant numbers in the national economy, including photo copy machine operator, collator operator, content checker, laminating machine off bearer, and blending tank tender helper. (Tr. at 21). Thus, the ALJ concluded that Ms. Jordan was not disabled. (Tr. at 22).

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    B.    **Ms. Jordan's Arguments on Appeal**

Ms. Jordan argues that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ erred by: (1) determining that her mental impairments were not severe; (2) failing to properly evaluate a medical opinion from her treating physician; (3) relying "exclusively" on the opinions of non-examining state agency consultants; (4) disregarding testimony from third parties about her symptoms; (5) failing to properly analyze her fibromyalgia symptoms; (6) failing to develop the record by seeking an opinion from a treating physician; (7) failing to provide a "function-by-function" assessment in determining her RFC; and (8) failing to consider the combination of all of her impairments in determining her RFC.

Ms. Jordan also presents a host of arguments concerning the system in place for determining disability. She claims that "[t]he process by which the agency determines disability is neither logical nor rational, fails to provide substantive due

4

process, results in decisions that are arbitrary and capricious and in unequal treatment for similarly situated claimants." *Doc. 12* at 2. She also claims that the "regulations and policies for determining disability are unconstitutionally vague" and "leave too much discretion to ALJs[.]" *Id*.

The Court will consider each of these claims separately.

### 1. Claim 1: Severity of Mental Impairments

Ms. Jordan claims that the ALJ erred in determining her mental impairments were not severe at Step Two. In particular, Ms. Jordan asserts the ALJ did not conduct a meaningful analysis of her impairments and instead "simply deferr[ed] to the unsupported opinions of the DDS consultants." *Doc. 12* at 8. She argues that the reports from prior consultative examinations in 2009 and 2014 show a longitudinal picture of her significant psychological difficulties, and the ALJ erred by not considering them in the analysis.

The Court disagrees and finds that substantial evidence on the record as a whole supports the ALJ's finding that Ms. Jordan's mental impairments were not severe. An impairment is considered non-severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 416.922. It is Ms. Jordan's burden to establish that she suffers from a medically-severe impairment at Step Two. *Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir. 2000).

In finding that Ms. Jordan's mental impairments were non-severe, the ALJ properly considered all of the evidence of record, including Ms. Jordan's reports about her symptoms and functional limitations, recent medical records, and prior administrative findings from state agency consultants in light of the criteria set out in the regulations for evaluating mental disorders. See *Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011); 20 C.F.R. § 416.920a(c)(3) (An ALJ will rate degree of functional limitations in areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.).

The ALJ found that Ms. Jordan's mental impairments were non-severe because the evidence showed she suffered no more than "mild" limitations in all of the four areas of functioning. See 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). These findings are supported by substantial evidence in the record, which shows that Ms. Jordan was still maintaining a relatively normal lifestyle despite not taking any medication or receiving any treatment for her mental impairments. See *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."). Even

without treatment, Ms. Jordan still was able to cook nightly, homeschool her two children, frequently socialize with friends and family, shop in stores including Walmart at least twice a month for a couple of hours, and get along with authority figures and others without issue. It is also significant that she did not allege in her application for benefits that her mental impairments kept her from working. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

The ALJ's decision to discount the opinions of two prior consultative examiners was reasonable. These opinions significantly predated the relevant time period, as they were authored in 2009 and 2014, respectively. Furthermore, they conflicted with the opinions of state agency consultants that were authored during the relevant time period, which the ALJ found were consistent with the objective medical record regarding Ms. Jordan's mental impairments during the relevant time period. This finding is supported by substantial evidence in the record, especially evidence of Ms. Jordan's failure to pursue treatment and her ability to participate in extensive daily activities. The ALJ was not required to order a consultative examination, because "there is no indication that the ALJ felt unable to make the assessment he did and his conclusion is supported by substantial evidence." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). The Court finds no error in the ALJ's evaluation of Ms. Jordan's mental impairments.

## 2. Claim 2: Evaluation of Treating Physician Opinion

Ms. Jordan claims the ALJ erred in discounting a seizure report filled out by her treating neurologist, Dr. David Oberlander, on November 19, 2018. (Tr. at 403). In the report, Dr. Oberlander wrote that Ms. Jordan had a history of partial complex seizures[3] occurring 1-2 times per month and she had last reported having a seizure in October 2018. He wrote that she began taking medication for seizures in 2017, and her medications were last adjusted in 2017, but he had not conducted an electroencephalogram ("EEG") or tested her therapeutic drug levels.

The ALJ found that this report was unpersuasive because it was inconsistent with Dr. Oberlander's treatment notes. This finding is amply supported by the record, which shows that Ms. Jordan did not report having seizures or a seizure disorder at any of her appointments with Dr. Oberlander in 2018. (Tr. at 389-401).[4] Dr. Oberlander's seizure form also conflicts with a statement Ms. Jordan gave in November 2018 wherein she claimed she had suffered 37 generalized tonic-clonic

---

[3] The Social Security listings describe complex partial seizures (known as dyscognitive seizures by the relevant listing) as being "characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00H1b.

[4] Treatment notes from April 2019 and later noted "an added history of seizures." (Tr. at 405).

seizures[5] in the past month, as recently as November 11, with associated symptoms that included falling to the ground, shaking, jerking, drooling, and incontinence. (Tr. at 262). A third party also reported that Ms. Jordan had suffered at least 17 generalized tonic-clonic seizures in the past month, including attacks that occurred on November 3 and November 10. Both of these statements pre-dated Dr. Oberlander's seizure form, which stated that Ms. Jordan's most recent reported seizure occurred in October 2018. Both the frequency of the seizures and their associated symptoms drastically differ between these reports.

     The ALJ noted only two other reports of seizures in the longitudinal medical evidence. At a new patient exam in November 2016, Ms. Jordan reported that she had a history of seizure disorder, but her MRI imaging was negative. (Tr. at 356, 373). In June 2017, she reported having a seizure two days prior. (Tr. at 354). She stated that her seizures were not controlled, but she had been out of medication. She also reported having 15 migraines with vertigo, nausea, and vomiting per month. Her treatment provider suggested an EEG test. Results from brain MRIs conducted in 2016 and 2018 were unremarkable. (Tr. at 373, 398).

---

[5] Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting, incontinence, and falls resulting in injury may occur. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00H1a.

Contrary to Ms. Jordan's assertions on appeal, the ALJ discussed these discrepancies in his opinion and they justify discounting Dr. Oberlander's seizure report. See *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (An ALJ may properly discount medical source statement containing limitations that "stand alone," do not exist in the physician's treating notes, and are not corroborated through objective medical testing.). Regardless, any error in failing to explain the inconsistencies in Dr. Oberlander's opinion was harmless. See *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (inconsistency in ALJ's decision was harmless error, as case was not close call, and record otherwise contained substantial evidence establishing matter at issue). Dr. Oberlander expressed no opinion regarding the functional effects of the reported seizures and cited no explanation or objective evidence to support the findings in his seizure report.

The ALJ was not required to afford "substantial weight" to Dr. Oberlander's opinion because Ms. Jordan filed her application for benefits after March 27, 2017. Thus, her claim is evaluated under the new regulation adopted by the Social Security Administration ("SSA") regarding the weight afforded to medical opinions.[6] See

---

[6] Ms. Jordan's argument that the SSA cannot abolish the "treating physician rule" because the rule was created by federal case law is unavailing. Congress has granted the Commissioner "exceptionally broad authority to prescribe standards for applying certain sections of the Act." *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (quotation omitted). The Act authorizes the Commissioner to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits" in disability cases. 42 U.S.C. § 405(a). The Court defers

10

*Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020) (citing corresponding regulation for Title II claims). That regulation states that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). The Eighth Circuit recognizes and applies these regulations to applicable claims. See e.g., *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021). Thus, the ALJ did not commit legal error by not giving Dr. Oberlander's opinion special deference because he was a treating physician.

### 3. Claim 3: Reliance on Prior Administrative Findings

Ms. Jordan argues that the RFC determination relies exclusively on the opinions of non-examining state agency consultants and is therefore not supported by substantial evidence. While it is true that the opinions of non-examining physicians, standing alone, do not constitute substantial evidence, the ALJ was entitled to rely on these opinions in conjunction with all of the other evidence in the record, which, as a whole, provides substantial evidentiary support for the RFC determination. See *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004).

---

to the SSA's interpretation of this change in agency policy. See *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865-66 (1984) (holding if a statute is ambiguous and agency's construction is reasonable, deference requires federal courts to accept agency's construction); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982-83 (2005) (judicial precedent does not displace a conflicting agency construction of a statute unless prior court decision held that the statute unambiguously forecloses the agency's interpretation).

Ms. Jordan's contention that the non-examining state agency consultants do not review the record finds no basis in fact and thus the Court rejects the argument as meritless. As for her argument that one of the reviewing physicians is not an acceptable medical source, the Court will accept as true the ALJ's finding that the physician has a medical license and is therefore an acceptable medical source. (Tr. at 20). Any error in this regard, however, is harmless, because substantial evidence supports the ALJ's decision even if one of the prior administrative medical findings is set aside. The Court agrees with the ALJ that the opinions are supported by, and consistent with, the medical evidence in this case.

### 4. Claim 4: Statements from Third Parties

Ms. Jordan argues that the ALJ failed to consider all of the evidence, specifically the third-party witness statement concerning her seizures. The ALJ did not disregard this evidence but found that the "observations and the accuracy thereof are questionable as they are simply inconsistent with the medical evidence of record." (Tr. at 20). Accordingly, the ALJ properly considered these statements in determining the RFC. See *Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000) (An ALJ is not required to list specific reasons for discrediting testimony of claimant's husband because the same evidence supported discounting both claimant's and husband's testimony.).

### 5. Claim 5: Evaluation of Fibromyalgia Symptoms

Ms. Jordan claims the ALJ improperly discounted the severity of her fibromyalgia pain due to the lack of objective findings in the record. The Court finds no error in the ALJ's evaluation of Ms. Jordan's fibromyalgia symptoms. The ALJ found her fibromyalgia to be a severe impairment and took it into account when formulating her RFC. The ALJ properly assessed the treatment modalities and physical examinations and determined that the objective evidence did not support her allegations of disabling fibromyalgia symptoms. Specific normal exam findings that the ALJ cited included normal gait, normal coordination, normal muscle tone, normal strength and full range of motion in her extremities, intact motor skills, and normal sensory testing in her arms and legs. The ALJ properly relied on these mostly normal exam findings because they were the most consistent results set forth by Ms. Jordan's treating physicians. See *Grindley*, 9 F.4th at 629 ("The ALJ's decision recognizes [claimant's] fibromyalgia diagnosis, but every fibromyalgia diagnosis does not entitle a claimant to benefits."). The ALJ permissibly afforded more weight to these normal exam results in assessing Ms. Jordan's capabilities. *Id*. The ALJ also properly considered Ms. Jordan's testimony and activities of daily living as well as her longitudinal course of treatment in assessing her fibromyalgia. The Court finds no error.

### 6. Claim 6: Development of the Record

Ms. Jordan argues the ALJ should have further developed the record in this case by seeking an opinion from a treating physician instead of relying on "his own interpretation of medical evidence." But an ALJ is not required to support his RFC assessment with a treating physician's opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ms. Jordan has failed to identify an undeveloped "crucial issue" in this case that warrants further examination. See *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). Ms. Jordan has simply not met her burden to prove her disability and the ALJ's decision is supported by substantial evidence.

### 7. Claim 7: "Function-by-Function" RFC Assessment

Ms. Jordan claims that the ALJ failed to perform a function-by-function RFC assessment of her impairments but fails to explain how the ALJ failed to perform this duty. After considering this argument, the Court finds no basis for reversal. See *Vandenboom v Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" a conclusory argument providing no analysis of the relevant law or facts regarding the issue at hand).

### 8. Claim 8: Combination of Impairments

Ms. Jordan argues the ALJ failed to consider the combined impact of all of her symptoms on her ability to maintain employment. The ALJ stated in his opinion that he had considered "all symptoms" and "the entire record." (Tr. at 14). The Court

presumes the ALJ acted in conformity with this statement. See *Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (quotation omitted). Moreover, the ALJ discussed all of Ms. Jordan's impairments and alleged symptoms. The Court finds no error.

### 9.  Challenges to Disability Determination Process

Ms. Jordan claims that the entire disability system is illogical, irrational, and unconstitutional. However, her arguments rely on broad, generalized grievances with the process as a whole, and she has not identified any particularized injury or causal relationship between the injury and the challenged conduct, nor can she show a likelihood that the purported injury would be redressed by a favorable decision. Moreover, these arguments largely concern Ms. Jordan's attorney's claims regarding the disability system. The Court does not consider these unsupported claims as evidence and finds they are not relevant to the review of the administrative decision at issue. Such a review is restricted jurisdictionally under 42 U.S.C. § 405(g) to "the evidence upon which the findings and decision complained of are based."

The Court finds that Ms. Jordan's remaining arguments are without merit. It is not the Court's task to re-weigh the evidence and make an independent decision, but rather to determine whether the evidence is adequate to support the decision

denying benefits. For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision.

## IV. CONCLUSION

The ALJ applied proper legal standards in evaluating Ms. Jordan's claims, and substantial evidence supports the decision to deny benefits. The Court should affirm the decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 2nd day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE